**Cynthia CHEATHAM, Plaintiff,**

v.

**PAISANO PUBLICATIONS, INC.
and T–Shurte's, Defendants.**

**Civ. A. No. C94–714–L(H).**

United States District Court,
W.D. Kentucky,
Louisville Division.

July 10, 1995.

---

Robert A. Donald, III, Conliffe, Sandmann & Sullivan, Louisville, KY, for plaintiff.

Robert E. Maclin, III, Gess, Mattingly & Atchison, Lexington, KY, for Paisano Publications, Inc.

Craig Kendrick, Covington, KY, for T–Shurte's.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff's claims arise out of the unauthorized publishing of her photograph by Defendant, Paisano Publications, and the subse-

quent use of a similar photo design on shirts sold and manufactured by Defendant, Shurte Graphics, Inc., d/b/a T–Shurte's. Each Defendant now moves to dismiss Plaintiff's claims against them. To consider these motions requires the Court to predict what elements of proof Kentucky courts may require to sustain various causes of action related to unauthorized appropriation of a person's image or likeness. The Court will dismiss all Plaintiff's claims, except her claim of appropriation of image.

## I.

Plaintiff creates "unique" clothing designs and displays these designs at bikers' events. At a Chillicothe, Ohio, bikers' festival, Plaintiff wore one of her distinctive creations, which displayed her bottom through fishnet fabric that replaced cut out portions of her blue jeans. In May of 1993, Paisano Publications' ("Paisano's") *In the Wind* magazine published a picture of Plaintiff's backside as part of a photo essay of the Chillicothe festival. The picture does not identify Plaintiff. A year and a half later, in December of 1994, Paisano's *Easyriders* magazine published T–Shurte's advertisement for a T-shirt with a similarly-clad backside, which Plaintiff claims portrayed her likeness.[1] T–Shurte's may have sold several hundred or more of the shirts.

Plaintiff alleges that Paisano's provided the *In the Wind* photo to T–Shurte's to display her likeness on T-shirts and that Paisano's received part of the income from the sale of each T-shirt. Plaintiff asserts five causes of action arising out of this appropriation: (1) invasion of privacy; (2) commercial exploitation of a likeness; (3) negligent licensing of an image without the owner's consent; (4) misappropriation of an image for commercial gain; and (5) unjust enrichment.[2] Plaintiff also seeks leave to file a Second Amended Complaint adding claims for interference with prospective business relations and for intentional infliction of emotional distress.

## II.

When considering a motion for dismissal, the Court must determine if a reasonable jury could find for Plaintiff under any set of facts. The Court also must accept the allegations of the complaint as true and should dismiss a claim only if it appears that the record as a whole could not lead a rational trier of fact to give Plaintiff the relief requested. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989).

Plaintiff asserts that her designs are unique and that, because of their uniqueness, her friends and customers recognize them. When evaluating Defendants' Motions to Dismiss, the Court must examine Plaintiff's claim, therefore, in light of the assumption that her designs are unique and that she sells these designs to customers who recognize them as hers.

All of Plaintiff's claims center around her allegation that Defendants appropriated her image. Kentucky has long recognized the invasion of privacy as an actionable tort. *Foster–Milburn Co. v. Chinn,* 134 Ky. 424, 120 S.W. 364 (1909). Over the years since *Foster–Milburn,* this theory of law has evolved, and in 1981, the Kentucky Supreme Court formally adopted the definition from the Restatement (Second) of Torts (1976). *McCall v. Courier–Journal & Louisville Times,* 623 S.W.2d 882, 887 (Ky.1981). Under the Restatement definition, four distinct causes of action exist, each of which is classified loosely as invasion of privacy:

(2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another ...; or

(b) appropriation of the other's name or likeness ...; or

(c) unreasonable publicity given to the other's private life; or

---

1. The advertisement and the T-shirt contain a drawing, which precisely reproduces the picture, except that a Harley–Davidson logo on the original design has been eliminated in the drawing.

2. In the original Complaint, Plaintiff also stated claims for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and for common law trademark infringement, which she abandoned in the First Amended Complaint.

(d) publicity that unreasonably places the other in a false light before the public....

Restatement (Second) of Torts (1976). In determining if Plaintiff states a meritorious claim for invasion of privacy, this Court must examine each of the four possible causes of action for invasion of privacy.

### A.

■ First, the Court must consider whether Defendants unreasonably intruded upon Plaintiff's seclusion. This is not a case where Plaintiff sought to keep her designs secret and wore them only to very private functions.[3] Instead, Plaintiff wore her unusual clothing at large public events, namely bikers' conventions, and in front of large crowds of people. If Plaintiff believed these designs were truly unique, she certainly might have expected that someone might photograph her in this clothing. Consequently, no reasonable jury could possibly conclude that Paisano's taking of these photos was an unreasonable intrusion upon her seclusion.

■ Second, the Court must consider whether Defendants gave unreasonable publicity to Plaintiff's private life. Plaintiff has stated that her friends and *customers* recognize her designs. If Plaintiff wears the clothing designs to attract attention to herself as well as the designs, then she has voluntarily taken them out of her private life and injected them into public view. Given the facts of this case, no reasonable jury could construe any attention given to Plaintiff's wearing of these designs as unreasonable publicity of Plaintiff's private life.

■■ Third, the Court must consider whether the publicity placed Plaintiff in a false light. The two basic requirements to sustain this action are: (1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the publisher has knowledge or acted in reckless disregard of the falsity of the publicized matter. *McCall v. Courier–Journal & Louisville Times*, 623 S.W.2d at 888. It is suffi-

cient that the publicity attributes to the plaintiff characteristics, conduct or beliefs that are false. *Id.* Plaintiff voluntarily wore this clothing to public events. Defendant photographed her exactly as she appeared at the bikers' event. Paisano's made no assertions about her character; in fact, they did not identify her. Plaintiff's own conduct and Defendant's unoffensive characterization leads to the certain conclusion that there was no false light invasion of privacy in this matter.

### B.

■ In her motion for summary judgment, Plaintiff concentrates on the fourth possible cause of action for invasion of privacy—Defendants' unauthorized appropriation of her likeness. Restatement (Second) of Torts, § 652A(2)(b). Among Plaintiff's claims are those for commercial exploitation of her likeness, negligent licensing of her image without her consent, and misappropriation of her image for commercial gain. These claims merely recast the claim for damages based on the improper appropriation of another's name or likeness.

Not all jurisdictions recognize the tort of unauthorized appropriation of likeness. But the Kentucky Supreme Court has suggested that it is available by adopting the Restatement view of invasion of privacy. Kentucky courts have not specifically addressed the elements of proof required to support this cause of action, however. Other courts have referred to the unauthorized use of another's likeness as the "appropriation of the right of publicity." *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1098 (9th Cir.1992) (appropriation of a voice is "a species of violation of the 'right of publicity,' the right of a person whose identity has commercial value—most often a celebrity—to control the use of that identity"); *Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123, 133 (2nd Cir.1984) ("[T]he right to publicity is essentially identical to the right to be free from commercial appropriation"); *see also* Restatement (Third) of Unfair Competition § 46, comment

---

**3.** Indeed, in his affidavit, Plaintiff's husband noted that Plaintiff never wore her designs in their home.

a ("The interest protected by these rules is often described as the 'right of publicity.' ").

A "right of publicity" was first identified in *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2nd Cir.1953) (A baseball player's legal interest in the publication of his picture on cards "might be called a 'right of publicity'" under New York law). The Restatement (Second) of Torts was adopted in 1976. About the same time, the United States Supreme Court, recognizing a similar right under Ohio law, stated that the right of publicity gave a person "personal control over commercial display and exploitation of his personality and the exercise of his talents." *Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 570, 97 S.Ct. 2849, 2854, 53 L.Ed.2d 965 (1977). The *Zacchini* Court noted that this interest does not involve a "false light" allegation, but rather ensures that the owner of the right receives the benefit of any commercial exploitation.

Plaintiff here makes a similar assertion. She alleges that Defendants have deprived her of the commercial benefit of her "image" by appropriating the image for their own commercial gain.[4] The Second Circuit has defined this issue as one in which the "plaintiff is not so concerned that the use occurs; [s]he simply wants to be the one to decide when and where, and to be paid for it." *Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d at 134. This statement perfectly articulates Plaintiff's position in this case. She merely wants to be compensated for the use of her likeness by Defendants for their own commercial gain.

■ Two distinct uses of Plaintiff's likeness could be the source of a claim under a right of publicity: (1) Paisano's printed her photograph in their photo essay of the bikers' event; and (2) T–Shurte's used a similar likeness on their T-shirts. The Court need only concern itself with the second use.[5] As to that issue, Defendants argue that such claims belong only to persons of celebrity status and that "plaintiff is no Elvis Presley, Muhammad Ali or Bruce Springsteen."

■ Having reviewed § 652A(2)(b) of the Restatement (Second) of Torts and the cases that discuss a right of publicity claim, the Court concludes the following principles should govern Plaintiff's claim for appropriation of likeness. Plaintiff must prove that she has developed a property interest in her likeness or her designs by proving that her image has commercial value and that she intended to profit from that value. Without such proof, Plaintiff cannot show that Defendants exploited the fame or fortune that Plaintiff has developed. *Id.* To be sure, such proof is normally found in cases involving celebrities. But celebrity status should not be an absolute prerequisite.[6] This Court concludes the best rule is that the remedy available in right of publicity claims belongs to those whose identity has commercial value. Commercial value may be established by proof of (1) the distinctiveness of the identity and by (2) the degree of recognition of the person among those receiving the publicity.

4. Plaintiff alleges that Paisano's provided Plaintiff's photo to T–Shurte's in exchange for part of the sale of each T-shirt, however. If selling the T-shirts with Plaintiff's unlawfully appropriated image creates liability for T–Shurte's, Plaintiff reasons, then that liability also falls on Paisano's for providing the photograph to T–Shurte's and for receiving some of the sale of these T-shirts.

5. The law protects the first use under an exception for newsworthy items, *Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. at 574, 97 S.Ct. at 2856. Paisano's merely took photos at the event and published them as part of their photo essay of the event. In doing so, Paisano's invaded no rights of Plaintiff's. This Court finds that publishing Plaintiff's photo as part of the photo essay is a newsworthy item and is entitled to First Amendment protection.

6. In *Waits v. Frito–Lay*, the Ninth Circuit rejected a requirement for superstar status, instead defining the standard as "known to a *large number* of people throughout a *relatively large* geographical area." *Waits v. Frito–Lay*, 978 F.2d at 1102. In reaching its decision, the court opined that the amount of damages awarded would reflect the extent of celebrity. *Id.* (citing *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 824–25 (9th Cir.1974) ("Generally the greater the fame or notoriety of the identity appropriated, the greater will be the extent of the economic injury suffered.")); *see also* Restatement (Third) of Unfair Competition § 46 comment d ("Private persons may also recover damages measured by the value of the use by establishing the market price that the defendant would have been required to pay to secure similar services from other private persons or from professional models.").

*Waits v. Frito–Lay, Inc.,* 978 F.2d at 1098, 1101–02. In order to succeed in her claim, Plaintiff must have a notoriety which is strong enough to have commercial value within an identifiable group.

The Court has grave doubts that Plaintiff can establish the proof necessary to show a sufficiently wide notoriety for this case to go forward. The photographic replica does not display Plaintiff's face; because the photo was taken from behind and includes only her backside from her waist to her thighs. Plaintiff's cause of action under a right of publicity claim may arise only if her image is distinctive enough that her friends and customers recognized the replica drawing on the T-shirt and identified this drawing as her "image."

■ Plaintiff's assertions that friends and customers recognize her designs and that these unique designs have commercial value overcomes Defendants' motions to dismiss at this early stage. If the recognition of Plaintiff's image is sufficiently clear and sufficiently broad-based, it may be an unlawful appropriation for which Plaintiff could receive damages. For these reasons, Defendants' Motions to Dismiss the claim for appropriation of image are denied at this time.[7]

### III.

■ Plaintiff has also filed a Motion to Amend the Complaint in order to add two more claims: (1) intentional infliction of emotional distress; and (2) intentional interference with prospective business relations. Kentucky has adopted the Restatement (second) of Torts § 46 view that defines outrageous conduct causing severe emotional distress. To prevail on the first claim, Plaintiff must prove: (1) that the conduct was intentional; (2) that the conduct caused severe emotional distress; and (3) that the conduct was outrageous. *Craft v. Rice,* 671 S.W.2d 247 (Ky.1984). On its face, the Complaint contains no facts from which a reasonable jury could conclude that Defendants' conduct was "outrageous." For reasons previously stated, there is no evidence nor any reason to believe that the publication of the T-shirt caused Plaintiff any emotional distress. Allowing Plaintiff to add this cause of action would merely prolong the litigation process and require the unnecessary expenditure of legal resources. Therefore, the Court denies Plaintiff's Motion to Add Intentional Infliction of Emotional Distress as a Claim.

■ Plaintiff also seeks to add a claim for Intentional Interference with Prospective Business Relations. To prevail on such a claim, Plaintiff must show that Defendants intentionally interfered with Plaintiff's business prospects and that this interference caused Plaintiff to lose profits to which she would have otherwise been entitled. The interference must have been intentional and must have occurred by the use of improper means. *Cullen v. South East Coal Co.,* 685 S.W.2d 187 (Ky.1984). Moreover, to support such a claim, Plaintiff must show that Defendants' actions prevented her from marketing these same or similar designs and from receiving these profits.

In this case, there is no indication that Plaintiff would have marketed these T-shirts herself or that by selling these shirts, Defendants deprived her of profits to which she was otherwise entitled. The mere allegation that Plaintiff might have received some benefit from her "unique" designs is not, without more, a sufficient basis to support a cause of action for intentional interference with prospective business relations.

Therefore, the Court will deny Plaintiff's request to amend her complaint.

### IV.

Plaintiff has moved for partial summary judgment on the issue of liability. Plaintiff's

7. Plaintiff also has asserted a claim for unjust enrichment. However, unjust enrichment in this circumstance merely forms a measure of damages in a right of publicity claim. It is not a separate cause of action. *See Zacchini* (The rationale for protecting the right of publicity is the straightforward one of preventing unjust enrichment by the theft of goodwill.) These damages stem from the theory that a defendant should not get for free that which has market value to the plaintiff and for which the defendant would normally have to pay. *Id.* at 576, 97 S.Ct. at 2858. If Plaintiff is able to show she is entitled to damages, a part of any profits derived from T-shirt sales could be justified as unjust enrichment of Defendants' use of her image.

only surviving claim is for appropriation of image. At this time, the record contains little evidence to support these claims. Using the recognized standard for summary judgment, and construing the facts in a light most favorable to the nonmoving party, this Court concludes that for all the reasons discussed above, the record does not support summary judgment.

The Court will enter an appropriate order.

## ORDER

This case is before the Court on various pending motions. The Court has issued a Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that all claims in Plaintiff's Complaint and First Amended Complaint are dismissed with prejudice except the claim for appropriation of image for commercial gain against Paisano Publications, Inc. and Shurte Graphics, Inc.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to amend her Complaint is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED.

IT IS FURTHER ORDERED that the parties shall have to and including October 15, 1995, to place in the record evidence relevant to Plaintiff's claim for appropriation of likeness. Thereafter, Defendants may file any appropriate dispositive motions. If the motion is denied, the parties will be allowed additional time to complete discovery prior to trial.